IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-02170-RM-NYW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

RCH COLORADO, LLC, F/K/A LUNA GAMING CENTRAL CITY, LLC, D/B/A FORTUNE VALLEY CASINO, D/B/A FORTUNE VALLEY HOTEL AND CASINO, AND D/B/A RESERVE CASINO HOTEL,

    Defendant.

---

**Protocol for Searches of Relevant ESI**

---

The ~~below is a~~ following protocol ~~the Parties have agreed to for~~ governs the search and production of electronically stored information ("ESI") in this civil action ~~e litigation~~.

**I.**     **Initial Framework:**

Electronically stored information ("ESI") discovery should be handled as effectively and efficiently as possible, taking into account proportionality, and with a maximum amount of collaboration. Accordingly, this protocol is intended to be an initial working framework, which may need adjustment as discovery is ongoing. Should adjustment or modification be required, the Parties will revisit the protocol and confer and collaborate over any necessary adjustments. Should the Parties be unable to reach an agreement on changes to the protocol, the Parties will call the Court for a telephone conference to resolve the issue.

**II.**     **Preservation Obligations:**

    **a. General Scope.**

Unless otherwise indicated, the relevant time period shall be January 1, 2010 to the present. To the extent that Defendant does not have possession, custody, and control over its predecessor's documents, it is not expected that such documents will fall within Defendant's discovery obligations.

~~Plaintiff's position: Unless otherwise indicated, the relevant time period shall be January 1, 2010 to present. The Parties shall preserve electronically stored~~

~~information from the relevant time period that relates to the claims and defenses in this case.~~

~~Plaintiff believes a starting of date of January 1, 2010 is reasonable because it represents approximately one year before Luna Gaming Central City, LLC ("Luna Gaming"), the predecessor entity to Defendant, purchased and took over operations of Fortune Valley Hotel and Casino ("Fortune Valley"). One of the main events at issue in Plaintiff's complaint is Luna Gaming's failure to hire the Charging Parties and other aggrieved individuals when it took over the casino's operations from Centaur Colorado, LLC ("Centaur") on January 25, 2011. Although Defendant claims that Luna Gaming was not incorporated until September 2, 2010, it is possible that electronic data from computers or servers in Defendant's possession and used by Luna Gaming executives involved in the purchase of Fortune Valley spans back until January 1, 2010. Indeed, it is possible that the sole purpose of forming Luna Gaming was to purchase and take over the operations of Fortune Valley. Personnel aspects of that takeover could have been discussed prior to the formation of Luna Gaming. Furthermore, it is self-evident that if Defendant is not in possession of electronic data prior to the formation of Luna Gaming, it is under no duty to preserve ESI created prior to that date. Defendant therefore suffers no prejudice from using a starting date of January 1, 2010.~~

~~Defendant's position: The Parties shall preserve electronically stored information currently in their possession, from September 2, 2010 to the present, that relates to the claims and defenses in this case. RCH Colorado, LLC, f/k/a Luna Gaming Central City LLC, was not incorporated until September, 2, 2010, and therefore cannot be expected to preserve information that existed prior to its own formation.~~

   **b. Specific ESI to be preserved.**

      **i.** Defendant RCH Colorado, LLC, f/k/a Luna Gaming Central City, LLC, d/b/a Fortune Valley Casino, d/b/a Fortune Valley Hotel and Casino, and d/b/a Reserve Casino Hotel (collectively "Defendant") shall preserve all ESI, including electronic communications and documents, related to the following: a) personnel aspects of Defendant's purchase of the assets of the Fortune Valley Hotel and Casino and assumption of the casino's operations; b) applications received by Defendant prior to and/or during the assumption of casino operations in January 2011, including all forms and attachments, and offers of employment or rejection relating to same; c) documents or communications relating to decisions to hire or reject applicants who applied for employment prior to and/or during the assumption of casino operations in January 2011; d) documents or communications relating to hiring criteria, applicant lists, interview notes, evaluations, and any policies or training materials concerning Defendant's hiring policies or practices prior to and/or during the assumption of casino operations in January 2011; e) any Human

Resources Information ("HRI") regarding workforce demographics related to age and sex; f) any electronic personnel records and employee payroll and benefits records; g) any electronically maintained employee handbooks or manuals, including drafts; h) all documents or communications regarding complaints of sex or age discrimination and Defendant's response or investigation related to same; i) any internal Equal Employment Opportunity ("EEO") studies, analyses, or investigations related to age or sex; and, j) any documents and communications discussing or referring to the charges of discrimination or this lawsuit.

<u>Defendant shall preserve all electronic advertisements soliciting job applications for the period of at least January 1, 2010 to the filing of the administrative complaints underlying these actions, or January 2, 2012, whichever is later.</u>  ~~Plaintiff's Position: In addition, Plaintiff's position is that Defendant shall preserve all electronic advertisements soliciting job applications for the period January 1, 2010 to the present.  Such advertisements may indicate the types of employees Defendant tends to solicit as well as the job duties and requirements of employment with Defendant.  The fact that some of these advertisements may post-date the initial hiring process at the center of this lawsuit does not render such advertisements irrelevant.~~

~~Defendant's position:  Defendant will agree to preserve electronic advertisements soliciting job applications, that are currently in its possession, relating to its initial hiring of employees in January 2011.  The only hiring decisions at issue in this case are the hiring decisions made in or around January 2011.  Any electronic advertisements soliciting job applications that were posted or used after January 2011 are not relevant to the claims and defenses in this case.  In addition, it would be extremely burdensome to require Defendant – which employs hundreds of employees – to retain such records on a going-forward basis.~~

ii. Plaintiff Equal Employment Opportunity Commission ("Plaintiff") shall preserve all ESI, including electronic communications and documents, related to the following: a) employment with Centaur Colorado, LLC of all Charging Parties and other aggrieved individuals identified by Plaintiff; b) all records of Plaintiff's investigation into Charge Nos. 541-2011-00971, 846-2011-39010, 846-2011-38989, and 541-2011-01046; and, c) any documents discussing or referring to the charges of discrimination or this lawsuit.

Plaintiff shall direct all Charging Parties and other individuals identified as aggrieved individuals to preserve all ESI in those individuals' possession that is relevant to this action, including: a) applications and/or resumes sent to Defendant; b) correspondence between individuals and Defendant related to individuals' applications for employment, such as offer or rejection letters; c) documents showing individuals' job search efforts; d) documents showing individuals' efforts to mitigate their damages; e) social media posts; and f)

3

e-mails and other electronic communications relating to the claims or defenses in this matter.

    **iii.** In entering into this protocol, the parties agree that they are not waiving objections as to the relevance of any ESI that may fall under the retention parameters of this protocol.

**c. Websites and Social Networking.**

Plaintiff's position: The Charging Parties and Defendant will ~~not delete~~ preserve content from social networking from this point forth on any portions of any private or corporate social networking websites or personal or corporate blogs, either in native or other format that reflects the entirety of the communication and the date upon which it was posted, regarding this litigation or the subject matter of this litigation. Plaintiff will direct all other aggrieved individuals identified in the future not to ~~delete~~ preserve content, either in native or other format that reflects the entirety of the communication and the date upon which it was posted, regarding this litigation or the subject matter of this litigation, from the time discussions ensue regarding whether such individual is an aggrieved person, ~~that point forth~~ on any portions of any social networking websites or personal blogs.
~~Plaintiff also proposes adding the following footnote: "Not all content on social networking sites is within the control of the Parties, and if a third-party posts on a Party's social networking site, but later removes or modifies that communication, this is not the fault of the Parties. The Parties are only responsible for content that is in their sole control."~~

~~Plaintiff's proposed language is appropriate because, under Section II(b)(ii), Plaintiff is required to direct all Charging Parties and other individuals identified as aggrieved individuals to preserve social media posts. It is more than reasonable for the Defendant to likewise preserve its social networking and blogs. Defendant could have discussed the lawsuit or its hiring practices on these blogs. Alternatively, if Defendant is not required to preserve this media, Plaintiff proposes that Section II(b)(ii) be amended to exclude social media posts from the protocol.~~

~~Defendant's position: Defendant disagrees that it is obligated to refrain from deleting all content from social networking websites or corporate blogs. Information on corporate social networking sites and corporate blogs is focused on marketing, and is not relevant to the claims and defenses in this lawsuit. Prohibiting Defendant from deleting such information indefinitely would seriously hamper Defendant's business operations, including its marketing and communications efforts. Accordingly, Defendant proposes that this paragraph be deleted.~~

**d. Holds.** Defendant's counsel will review the terms of this protocol with Defendant, and Plaintiff's counsel will review the terms of this protocol with the Charging Parties and any other aggrieved individuals later identified by Plaintiff.

**III.**     **Production Format:**

The Parties will preserve ESI in native format. ESI need not be produced in native format unless the original content will be altered, modified, or distorted by modifying the native format, the native format is easiest to produce, or the requesting party requests that the information be produced in native format. All such requests shall be governed by Fed. R. Civ. P. 26(b)(1), 26(b)(2)(B), and 26(b)(2)(C). Unless native format is produced within the parameters specified above, the Parties will exchange ESI in a text-searchable, unitized PDF or Tiff format, whichever specified.

IV. **Protocol for search of email accounts and social networking websites and blogs:**

   a. **Custodians.**

   <u>Each side will identify no more than five (5) additional custodians beyond any charging parties or identified aggrieved parties.</u>   ~~Plaintiff's position: Each Party will identify no more than 10 custodians, except that if the number of aggrieved individuals exceeds 10, Defendant will be able to identify all named aggrieved individuals as custodians.~~

   ~~Defendant's position: Each Party will identify no more than 10 custodians (not including charging parties and all aggrieved individuals identified by Plaintiff).~~

   b. **Search Terms.**

   ~~Plaintiff's position: The Parties will conduct an initial search of no more than 40 search terms a piece. Plaintiff has already drafted a preliminary list of 40 relevant search terms. Plaintiff believes a list of no more than 20 search terms a piece is far too low.~~

   ~~Defendant's position: The Parties will conduct an initial search of no more than 20 search terms a piece. Defendant believes a list of more than 20 search terms is not necessary.~~

   <u>The Parties are ORDERED to meet and confer regarding specific search terms to be used, and to the extent there remains a dispute, to contact the court for resolution.</u>

   The Parties agree to consider various strategies to minimize the risk and burden of over production, if necessary, including:

   i. If the search term is a proper name, that search term will not be applied to that individual's email or social networking accounts;

   ii. If a word is reasonably calculated to produce relevant discovery, but may also yield to the production of a large number of irrelevant documents, the Parties will contemplate use of Boolean operators, word combinations, and/or limiting the search further to only certain custodians or time periods in the attempt to yield narrower results.

5

   **iii.** For purposes of counting search terms, the names of the Charging Parties and any other aggrieved individuals shall together count as only one search term.

All electronic communications resulting from application of these search terms must be produced, unless privileged and included on a privilege log. Search parameters may require adjustment. If either Party believes adjustment is necessary, the Parties will attempt to reach agreement on what adjustment is necessary, and failing agreement, will contact the Court for a telephone conference to discuss the matter.

**V.**  **Protocol for searching and production of other ESI, including administrative and/or corporate records, payroll data, and HRI:**

Plaintiff has requested information about payroll and benefits, employee handbooks, hiring policies and procedures, hiring criteria, applications and related materials, applicant evaluation materials, offers of employment with Defendant, EEO studies and investigations, and training materials. Defendant has requested Plaintiff's administrative file pertaining to Charge Nos. 541-2011-00971, 846-2011-39010, 846-2011-38989, and 541-2011-01046; financial records of the Charging Parties, including tax records and earnings records; and the Charging Parties' medical records. With respect to these documents, some or all of which may be ESI, the custodians and search terms do not apply. If there is any dispute regarding these requests, the Parties will attempt to informally resolve such dispute, and failing agreement, will call the Court for a telephone conference to discuss the matter.

**VI.**  **Inadvertent Disclosure of Privileged Information (Clawback Provision):**

The Parties will take reasonable steps to protect against inadvertent disclosure of materials protected by the work product doctrine, attorney-client privilege, and governmental deliberative process privilege recognized by the federal courts ("Protected Materials"). The inadvertent disclosure of Protected Materials shall not constitute a waiver of the attorney work product doctrine, attorney-client privilege, or the government deliberative process privilege. Any party that discovers it has sent or received Protected Materials shall immediately notify the opposing party so that appropriate steps to return or destroy the Protected Materials may be taken. The Parties are specifically afforded the protections of Fed. R. Evid. 502(d) and (e). This Order supplements, and does not supersede, any protections already afforded by Fed. R. Evid. 502 or Fed. R. Civ. P. 26(b)(5)(B).

**VII.**  **Proportionality:**

Cellphones and text messages need not be searched in this case by any Party, as the costs of searching cell phones, forensically or otherwise, is disproportionate to the likely value of the discovery doing so would yield.

As discovery proceeds, the Parties should continue to identify additional ESI sources which the Parties agree are, although accessible, disproportionately costly for the needs

of this case and therefore need not be searched, as well as ESI sources that the Parties believe are not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

DATED: January 15, 2016                    BY THE COURT:


                                            s/ Nina Y. Wang
                                            Nina Y. Wang
                                            United States Magistrate Judge